# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**HERBERT R. SMITH**                                                         **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 4:10-CV-47-M**

**UNITED STATES OF AMERICA et al.**[1]                            **DEFENDANTS**

## MEMORANDUM AND ORDER

Plaintiff, Herbert R. Smith, has filed a motion for summary judgment against Defendants United States of America,[1] Darwin Dennison, and Jason Woosley, regarding his claim relating to an alleged near-fatal heart attack in August 2009 (DN 18).

Defendants Darwin Dennison and Jason Woosley have filed a motion for summary judgment in their favor on all claims against them, which is also a response to the motion for summary judgment filed by Plaintiff (DN 26).[2] Plaintiff has responded (DN 29). Defendants Dennison and Woosley have replied (DN 31).

The matter being ripe, the Court will deny Plaintiff's motion for summary judgment and grant Defendants Dennison and Woosley's motion for summary judgment.

## I. FACTS

In his complaint, Plaintiff alleged, in pertinent part, that Defendants Dennison and Woosley, as the Jailer and Chief Deputy of the Grayson County Detention Center (GCDC) where Plaintiff was incarcerated as a federal prisoner from May 26, 2009, until July 2, 2009, had a duty to ensure Plaintiff's safety and health during his incarceration and for at least thirty days

---

[1] The United States has filed a motion to dismiss based on lack of jurisdiction (DN 32), which will be addressed in a separate Memorandum and Order.

[2] Plaintiff filed a reply (DN 28).

thereafter. He alleged that he was to be provided on his release at least $100; bus fare to Ashland, Kentucky; at least a 30-day supply of his five medications for his heart condition; and a new (or old) outfit of clothing and shoes and work clothing. He alleged that he was provided with none of these. He further alleged that on August 24, 2009, he suffered a near-fatal heart attack, which was caused because he had none of the medications that were supposed to be provided on his release on July 2, 2009.

In his memorandum in support of his motion for summary judgment,[3] Plaintiff explains that he suffered a heart attack on March 20, 2007, while at the Kentucky State Penitentiary (KSP). He asserts that after his heart attack, he was taken to the hospital where a steel stent was inserted in an artery near his heart. He further states that when he was returned to KSP from the hospital, the hospital had prescribed Plavix, aspirin (which was to be taken together with the Plavix), rosuvastatin, metoprolol, and nitroglycerin to be taken for chest pain. He states that the KSP doctor prescribed Plavix, Atenolol, Simvastatin, and nitroglycerin, but that aspirin was not prescribed because it was sold in the canteen. He states that he took these medicines continuously from March 22, 2007, until July 5, 2009, and that not taking those medications from July 6, 2009, until August 24, 2009, caused his heart attack. Plaintiff states that from May 19, 2009, to July 2, 2009, when he was confined at GCDC in federal custody, he was given his prescribed medication, but not his aspirin. He asserts that during this time period aspirin "<u>WAS NEVER</u> made available/or given to the Plaintiff, and Plaintiff's financial status prevented him from purchasing his in question medications (that cost approximately $175.00 for a thirty (30)

---

[3] He attaches an affidavit to his memorandum averring that everything he stated in the memorandum is true.

day supply) from July 2, 2009 until August 24, 2009."

Plaintiff further states in his summary-judgment motion that, upon his release, he was not provided with new clothes and shoes, at least $100, a bus ticket to Ashland, Kentucky (which, he states, should have been to Dayton, Ohio), and a 30-day supply of his medications. He then states:

> Plaintiff was not only released from federal custody on July 2, 2009 <u>WITHOUT</u> his above said life-saving medications, he was also released "buck naked and broke." He had no underclothes but a worn out T-Shirt, and the pants he was given was to small, and the orange canvas shoes (like given to prisoners when they are being transferred from one institution to another one) that the Plaintiff was given were cracked across the soles and all the way through. Plaintiff had no clothes or money resource in the free community, and he told the jailers he was going to live in Dayton, Ohio with his brother when they said he had to give them a place he would be residing upon his release. Then the jailers asked him if he had any family in Kentucky. When Plaintiff said yes in Ashland the jailers said they would give Plaintiff a ride (transportation) to Ashland, Kentucky.

Among other things, Plaintiff attaches as exhibits to this summary-judgment motion is a copy of a discharge summary from Western Baptist Hospital dated March 22, 2007, with a discharge diagnosis of

> 1. Acute anterior myocardial infarction. Left ventricular ejection fraction 55%.
> 2. Status post successful angioplasty and stenting of the left anterior descending with a drug-eluding stent.
> 3. Borderline diabetes mellitus.
> 4. Tobacco abuse, probably chronic obstructive pulmonary disease.
> 5. Previous illicit drug use.
> 6. Mild dyslipidmia.

His discharge medications are listed as:

> 1. Plavix 75 mg daily continued at least 6-12 months.
> 2. Enteric coated aspirin 81 mg daily to be continued indefinitely.

3

       3. Crestor 10 mg nightly.
       4. Chantix 0.5 mg daily . . . to aid in smoking cessation.
       5. Toprol XL half of 25 mg tablet daily.
       6. Nitroglycerin 0.4 mg sublingual p.i.n. chest pain.

Plaintiff also attaches a "Discharge Instruction" sheet which instructs him to take his medicines as instructed and that "Aspirin and Plavix are important to keep your stent open." He also attaches a discharge notice from the Kentucky Department of Corrections (KDOC) for sentences resulting from indictments in Boyd County, Kentucky. These appear to be state sentences.

Also attached is a discharge sheet from a hospital in Dayton, Ohio, dated August 24, 2009, indicating that on that date Plaintiff had a left heart catheterization after presenting with acute onset severe chest pain. Finally, he attaches a November 12, 2010, discharge summary from a medical center which instructs him to continue taking "these medications which have NOT CHANGED": Plavix 75 mg; simvastatin 40 mg, aspirin 325 mg, and isordil 30 mg.

There appears to be no disagreement that Plaintiff previously suffered a heart attack in 2007 for which he had been prescribed medications; that those medications were provided to him while in KDOC except for aspirin, which he was able to purchase; that he had a heart attack in August 2009; and that when he was released he was given no money by GCDC, he was driven to a relative's house in Ashland, and he had pants, shoes, a shirt, and at least three-days worth of his medicines.

There is disagreement as to whether he had underclothes, whether he had a three-day or a seven-day supply of his medicines, whether the August 2009 heart attack was caused by him not having his medication, and whether Dayton or Ashland was his place of residence. For the following reasons, the Court finds that these disputed issues of fact are not material and do not

prevent summary judgment in favor of Defendants.

## II. ANALYSIS

**A.     Summary-judgment standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a

sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

### A. *Release gratuity*

Defendants Dennison and Woosley argue that there is no right to a release gratuity because the decision whether to give a released inmate any money is entirely discretionary. Plaintiff argues that it is not a discretionary function but one which requires the determination of the amount of gratuity to be consistent with the needs of the inmate and the public interest. Here, he argues, he had no money except the $10 to $20 given to him by the ministerial association and therefore he should have been given either the $500 allowed by statute or enough to purchase his prescribed medicine until he began getting Ohio medicaid in September 2009. He also asserts that he claimed that even if he was given money by the ministerial association, it would not take away from Defendants' obligation to provide him with a release gratuity.

> Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with--
> * * *
> (2) an amount of money, not more than $500, determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that no sum should be furnished[.]

18 U.S.C. § 3624(d).

The pertinent regulation provides: "An inmate is eligible for a gratuity as determined by the availability of personal and community resources. Greater consideration may be given to an inmate without funds or community resources." 28 C.F.R. § 571.21(a).

Other courts have considered claims by released prisoners that they had a right to some amount of money on their release and have rejected those claims. *See Kenan v. Francis*, No.

2:05CV76, 2006 WL 3900109, at *5 (N.D. W. Va. June 13, 2006) ("Contrary to his own beliefs, petitioner is not entitled to a release gratuity under § 571.20. Release gratuities are solely within the discretion of the BOP, and the BOP has exercised its discretion in this case."); *Palmer v. Fed. Bureau of Prisons*, No. CV 05-1907-MO, 2006 WL 533511, at *2 (D. Ore. Mar. 2, 2006) ("It is clear from the language of the regulation cited by plaintiff that the Bureau of Prisons is not required to award gate money to departing inmates because the gate money is 'a discretionary gratuity.'"); *Moes v. Baney*, No. CIVA RWT-05-1148, 2005 WL 4898861, at *2 (D. Md. Nov. 1, 2005) ("[A]fter examination of the provisions of § 3624(d), the Court finds that decisions by U.S. Bureau of Prisons ("BOP") staff regarding the amount of release gratuities are discretionary in nature." (footnotes omitted)). The Court finds that Plaintiff had no right to a release gratuity. Therefore, Defendants are entitled to summary judgment on this claim.

### B. *Suitable clothing*

In his complaint, Plaintiff alleged that he should have been provided with new clothes on his release, but instead was only provided with "worn-out pants, orange canvas shoes (like given prisoners when transported) with no socks and the shoes were cracked all the way across the soles and through the shoes". In his summary-judgment motion, Plaintiff argues that when he was released from custody he was given unsuitable clothing consisting of no underclothes (shorts or socks), his pants were too small, and his orange jailhouse canvas shoes were cracked all the way through the soles.

Attached to their motion for summary judgment are the affidavits of Deputy Jailer Morris Basham and Defendant Woosley, who avers that at the time Plaintiff was transported to Ashland, he was wearing a shirt, a pair of pants, underclothes, and shoes and that those clothes were

7

suitable for the time of year and his release destination.

The applicable statute provides that "suitable clothing" be provided to released inmates. 18 U.S.C. § 3624(d). The regulation states that "[i]t is the policy of the Bureau of Prisons that an inmate being released to the community will have suitable clothing . . ." 28 C.F.R. § 571.20. The regulations further provide: "Staff shall provide release clothing appropriate for the time of year and the inmate's geographical destination. Upon request, work clothing will be provided. Nonavailability of work clothing may limit this practice." 28 C.F.R. § 571.22(a).

Whether or not Plaintiff had shorts or socks, Plaintiff had pants, shirt, and shoes, which would have been adequate clothing for the month of July. Thus, the issue as to whether Plaintiff had shorts or socks, while disputed, is not material. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). A fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248. The Court finds that Defendants are entitled to summary-judgment on this claim.

C.  *Transportation*

Defendants Dennison and Woosley argue that the statute provides that a released inmate should be transported to his legal residence or to his place of conviction, which they did when they took him to his sister and brother-in-law's house in Ashland, Kentucky. Attached to Defendants' motion is the affidavit of Defendant Woosley who avers that on July 2, 2009, Deputy Jailer Basham transported Plaintiff to Ashland, Kentucky, and that he had been advised by Plaintiff that his place of residence was there and also that it was his understanding that that is

8

where the place of conviction was.

Plaintiff's claim in his complaint was that he was owed, and did not receive, bus fare to Ashland, Kentucky. *See* DN 1, at p. 5-6 ("upon Plaintiff's release from their custody on July 2, 2009, he was to be provided by law and policy: . . . Bus fare to Ashland, Kentucky."), 11 ("Plaintiff was suppose[d] to have been provided as required by law and policies: . . . A bus ticket to Ashland, Kentucky"), and 13 (Upon Plaintiff's in question release from Federal custody on July 2, 2009 federal law and policy required Plaintiff to be provided . . . Bus ticket to Ashland, Kentucky . . . and one of the Jailers give Plaintiff a ride to Ashland, Kentucky **AFTER** THE Jailers told Plaintiff they would give him nothing upon his release and the Plaintiff threatened to rob the first place he came to."). Plaintiff made no mention of residing in Dayton, Ohio, or of desiring to go to Dayton, in his complaint.

In his motion for summary judgment (DN 18),[4] Plaintiff stated: "Plaintiff had no clothes or money resource in the free community, and he told the jailers he was going to live in Dayton, Ohio with his brother when they said he had give them a place he would be residing upon his release. The jailers asked him if he had any family in Kentucky. When Plaintiff said yes in Ashland the jailers said they would give Plaintiff a ride (transportation) to Ashland, Kentucky." Plaintiff argues that he told officials at the Grayson County Detention Center that he would be living with his brother in Dayton, Ohio, and that neither his federal crime of conviction nor his

---

[4] Plaintiff could not have changed his story in response to Defendants' summary-judgment motion. *See Gibson v. Ramsey*, No. 99 C 5315, 2004 WL 407025, at *4 (N.D. Ill. Jan. 29, 2004) ("plaintiff's response to the motion for summary judgment cannot amend his complaint.") (citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)). However, since he raised the issue of wanting to go to Dayton in his summary-judgment motion, the Court will consider it. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997); 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1493 at 19 (2d ed. 1990).

9

residence was in Ashland, Kentucky, like Defendants claim. He also argues that under federal laws and regulation he should have been given a bus ticket or transportation to Dayton, Ohio.

The statute provides:

> Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with– . . . transportation to the place of the prisoner's conviction, to the prisoner's bona fide residence within the United States, or to such other place within the United States as may be authorized by the Director.

18 U.S.C. § 3624(d). The regulation provides: "Transportation will be provided to an inmate's place of conviction or to his/her legal residence within the United States or its territories." 28 C.F.R. § 571.22(c) . Defendants have proved that they thought Ashland was his residence. It appears that in Ashland Plaintiff had a sister and that, in Dayton, he had a brother. Presumably, Plaintiff did wish to live in Dayton as he was living there on July 15, 2009, and that he applied for medical and food-stamp assistance in Ohio. However, it is not clear that Plaintiff, who had been incarcerated for years, was entitled to pick his brother's house rather than his sister's house as his legal residence. Moreover, under the statute and regulation he could have been transported to Lexington where his federal conviction was and where presumably he did not have any family with which to stay.

Defendants also have shown that they believed that Boyd County was where his conviction arose. The indictments from Boyd County seem to indicate that Plaintiff served state sentences from indictments in Boyd County, not his federal sentence. However, it appears that his federal conviction arose in Lexington, Kentucky, which is in the Eastern District of Kentucky. Ashland is also in the Eastern District. Thus, it is at least arguable that he was taken to his place of conviction.

In short, it is clear from the statute that he was only entitled to transportation, not to bus fare. And, as his complaint made clear, he was driven to Ashland, Kentucky, and dropped off at his relative's house. He was provided transportation, not simply let out the prison's front door and left to his own devices. The Court finds that Defendants are entitled to summary judgment in their favor on this claim.

### D.     *Lack of medication*

Defendants argue that Plaintiff points to no authority for his assertion that he was entitled to a 30-day supply of the prescribed medicines, that contrary to Plaintiff's assertion, Plaintiff was on three prescribed medications, not five (*i.e.*, that he had not been prescribed nitroglycerin or aspirin), that Plaintiff was given an additional seven-days worth of medication upon his release, and that Plaintiff has produced no evidence to show that his alleged August 2009 heart attack was caused by lack of medication.

Among other documents, Defendants attach the affidavit of Rita Wilson, Head Nurse at GCDC, who averred that Plaintiff was not under a prescription for nitroglycerin or aspirin while at GCDC, that Plaintiff received his prescribed medicines – Atenolol, Plavix, and Simvastatin – during his incarceration at GCDC; and that he received seven-days worth of those medicines on his release on July 2, 2009. Also, attached is a form signed by Plaintiff in which he acknowledges receiving on his release on July 2, 2009, Altenolol 25mg, Plavix 75 mg, and Simvastain 80 mg.

In response, Plaintiff argues that while at GCDC he was neither given aspirin nor was it made available to him and none was provided at his release. As Defendants point out, Plaintiff points to no requirement that he be provided with any medication upon his release, much less a

11

thirty-day supply. The statute and regulations do not require that a released inmate be provided with a supply of medication. Thus, whether he was released with a three-day or a seven-day supply of his prescribed medication is immaterial. With regard to whether Plaintiff received aspirin while at GCDC, Plaintiff does not explain why he did not continue to purchase it at the canteen at GCDC since he apparently had been purchasing it at KSP. He asserts that during the time period May 19 to July 2, aspirin was not "made available" to him because his "financial status prevented him from purchasing his in question medications (that cost approximately $175.00 for a thirty (30) day supply) from July 2, 2009 until August 24, 2009," but he does not explain why he could not just pay for the aspirin, which certainly would not have cost $175.00, at the canteen.

In short, Plaintiff has not shown that he had a right to any medication on his release or that he could not have continued to purchase aspirin while at GCDC. Thus, whether or not his 2009 heart attack occurred because of an interruption in his medication, Plaintiff has not shown that any interruption was attributable to Defendants. *See Lucas v. Leaseway Multi Transp. Service, Inc.*,
738 F. Supp. 214, 217 (E.D. Mich. 1990) (holding nonmoving party must do more than raise some doubt as to the existence of a fact). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (internal quotations omitted). Defendants are entitled to summary judgment on this issue as well.

## III. CONCLUSION

Plaintiff has failed to show that he is entitled to summary judgment in his favor. Therefore, his summary-judgment motion (DN 18) is **DENIED**.

Plaintiff has failed to refute Defendants' arguments in their summary-judgment motion and also has failed to demonstrate the existence of genuine issues of material fact. Therefore, Defendants Darwin Dennison and Jason Woosley are entitled to judgment as a matter of law. The motion for summary judgment (DN 26) is **GRANTED**. The claims against Defendants Darwin Dennison and Jason Woosley will be **DISMISSED** by separate order.

Date:

cc: Plaintiff, *pro se*
 Counsel of record
4414.009